[944 NE2d 1104, 919 NYS2d 465]

Mandarin Trading Ltd., Appellant, v Guy Wildenstein et al., Respondents.

Argued January 5, 2011; decided February 10, 2011

174

## POINTS OF COUNSEL

*Crowell & Moring LLP*, New York City (*Clifton S. Elgarten, Samaa Haridi, Birgit Kurtz* and *Daniel Ginzburg* of counsel), for appellant. I. The courts below addressed the claims in a manner inconsistent with the basic facts set forth in the complaint. (*Leon v Martinez*, 84 NY2d 83; *Faggionato v Lerner*, 500 F Supp 2d 237; *Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553; *Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417; *Buxton Mfg. Co. v Valiant Moving & Stor.*, 239 AD2d 452; *Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536; *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377.) II. Each of the counts of the complaint has been properly pleaded. (*Tindle v Birkett*, 171 NY 520; *Eaton Cole & Burnham Co. v Avery*, 83 NY 31; *Kimmell v Schaefer*, 89 NY2d 257; *State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling*, 95 NY2d 427; *Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr.*, 59 AD3d 473; *State of New York v Daicel Chem. Indus., Ltd.*, 42 AD3d 301; *Simonds v Simonds*, 45 NY2d 233; *Banque Worms v BankAmerica Intl.*, 77 NY2d 362; *National Bank of Commerce in N.Y. v National Mechanics' Banking Assn. of N.Y.*, 55 NY 211.) III. That an appraisal is an "opinion" does not vitiate liability for either intentional or negligent wrongdoing. (*Rodin Props.-Shore Mall v Ullman*, 264 AD2d 367; *Jacobs v Lewis*, 261 AD2d 127; *DH Cattle Holdings Co. v Smith*, 195 AD2d 202; *Spitzer v Christie's Appraisals*, 235 AD2d 266; *Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284.)

*Schindler Cohen & Hochman LLP*, New York City (*Steven R. Schindler* and *Daniel E. Shaw* of counsel), for respondents. I. The Appellate Division did not err in affirming the dismissal of Mandarin Trading Ltd.'s claims for fraudulent misrepresentation and concealment. (*Lama Holding Co. v Smith Barney*, 88 NY2d 413; *Cohen v Houseconnect Realty Corp.*, 289 AD2d 277; *Godfrey v Spano*, 13 NY3d 358; *SNS Bank v Citibank*, 7 AD3d 352; *Zanett Lombardier, Ltd. v Maslow*, 29 AD3d 495; *Tindle v*

*Birkett*, 171 NY 520; *Eaton Cole & Burnham Co. v Avery*, 83 NY 31; *Buxton Mfg. Co. v Valiant Moving & Stor.*, 239 AD2d 452; *Ravenna v Christie's Inc.*, 289 AD2d 15; *Rodin Props.-Shore Mall v Ullman*, 264 AD2d 367.) II. The Appellate Division did not err in holding that Guy Wildenstein's July 28, 2000 letter was a nonactionable opinion. (*Jacobs v Lewis*, 261 AD2d 127; *Chase Invs. v Kent*, 256 AD2d 298; *Greenberg v Chrust*, 282 F Supp 2d 112; *Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284; *Struna v Wolf*, 126 Misc 2d 1031; *Spitzer v Christie's Appraisals*, 235 AD2d 266.) III. The Appellate Division did not err in affirming the dismissal of Mandarin Trading Ltd.'s negligent misrepresentation claims. (*Parrott v Coopers & Lybrand*, 95 NY2d 479; *Ravenna v Christie's Inc.*, 289 AD2d 15; *Kimmell v Schaefer*, 89 NY2d 257; *Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536.) IV. The Appellate Division did not err in affirming the dismissal of Mandarin Trading Ltd.'s contract claims. (*767 Third Ave. LLC v Greble & Finger, LLP*, 8 AD3d 75; *American-European Art Assoc. v Trend Galleries*, 227 AD2d 170; *Matter of Sud v Sud*, 211 AD2d 423; *Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783.) V. The Appellate Division did not err in affirming the dismissal of Mandarin Trading Ltd.'s unjust enrichment claim. (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415; *Banque Worms v BankAmerica Intl.*, 77 NY2d 362.)

### OPINION OF THE COURT

JONES, J.

In a dispute arising from the purchase and sale of the painting *Paysage aux Trois Arbres* by Paul Gauguin, this Court is asked to determine whether claims sounding in fraud, negligent misrepresentation, breach of contract, and unjust enrichment were properly pleaded in the plaintiff's complaint.

In July 2000, J. Amir Cohen approached plaintiff Mandarin Trading Ltd.* to solicit interest in the purchase of the painting for investment purposes. Cohen explained that he could arrange a transaction for the sale and subsequent resale of the painting at an auction. Mandarin was interested in the opportunity, but sought (1) an appraisal of the painting, (2) a report of its condition, and (3) a report of its prior ownership. Cohen agreed to obtain the requested information and recommended defendant

---

* Phoenix Capital Reserve Fund is the parent corporation of Mandarin. Phoenix Capital's director, Patrick Blum, was approached by Cohen to determine interest in purchase of the painting.

Guy Wildenstein, an allegedly renowned expert on Gauguin, for the appraisal.

On July 28, 2000, Wildenstein presented a written appraisal letter to Michel Reymondin, which stated that the painting was worth $15 million to $17 million. Neither Reymondin's role in the transactions, nor his relationship to the parties is pleaded. Furthermore, the letter is addressed solely to Reymondin and neither indicates the purpose of the letter nor who requested the valuation of the painting. While the letter revealed that the painting was part of Mrs. Arthur Lehman's collection and was once sold by Wildenstein, it did not disclose any contemporaneous ownership interest. Mandarin received the letter, the complaint does not say from whom, on August 12, 2000.

On August 9, 2000, Cohen contacted and informed Mandarin that if the painting was purchased expeditiously, it could be sold at auction through Christie's at an optimum price. Christie's had outlined the logistics of the auction in a letter to Cohen in which Christie's proposed to hold an auction for the painting in New York with a reserve price of $12 million—a price below which the painting would not sell. Christie's estimated that the painting could sell for $12 million to $16 million.

Mandarin purchased the painting through a series of transactions that occurred during the period of August 16, 2000 to August 30, 2000. First, Peintures Hermes S.A., a company allegedly owned by Wildenstein, forwarded an invoice to Calypso Fine Art Ltd., an intermediary, for the sale transaction. Mandarin then wired $11.3 million for the purchase of the painting to Calypso's account. Finally, Calypso paid $9.5 million to Peintures in exchange for the painting and then transferred the painting to Mandarin. It is further alleged that Peintures deposited $8.8 million into a bank account owned by Wildenstein.

On November 8, 2000, Christie's held an auction for the painting, but the highest bid failed to exceed the reserve price and the painting was not sold. Mandarin has since retained ownership of the painting.

Before discovery, Supreme Court granted Wildenstein's CPLR 3211 (a) (1) and (7) motion to dismiss Mandarin's complaint (17 Misc 3d 1118[A], 2007 NY Slip Op 52059[U]). Supreme Court held that Mandarin's fraud claims failed because the complaint did not allege that Wildenstein intended to defraud Mandarin through a misstatement of fact upon which Mandarin could

justifiably rely. The negligent misrepresentation claim was dismissed for lack of a special relationship, privity, or a privity-like relationship between the parties. In addition, the breach of contract claims were dismissed for failure to plead the existence of a contract. Finally, the unjust enrichment claim was dismissed because Supreme Court concluded that Mandarin unjustifiably relied upon the appraisal.

In a 3-2 decision, the Appellate Division affirmed dismissal of Mandarin's complaint by holding that the pleadings did not sufficiently allege claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment (65 AD3d 448 [1st Dept 2009]). One dissenting Justice voted to affirm dismissal of the claims at law, but to reinstate the equity claim of unjust enrichment, while the other dissenting Justice sought to reinstate Mandarin's entire complaint. Mandarin appeals to this Court as of right, from the two-Justice dissent, pursuant to CPLR 5601 (a).

In the context of a CPLR 3211 motion to dismiss, the pleadings are "to be afforded a liberal construction. [The Court must] accept the facts as alleged in the complaint as true, [and] accord plaintiffs the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994] [citation omitted]; *see also Morone v Morone*, 50 NY2d 481, 484 [1980]). Even affording Mandarin all favorable inferences, the complaint fails to sufficiently plead its claims, and we now affirm.

### Fraud

Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *see also Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 406-407 [1958]). Furthermore, where a cause of action is based in fraud, "the circumstances constituting the wrong shall be stated in detail" (*see* CPLR 3016 [b]; *see also Lanzi v Brooks*, 43 NY2d 778, 780 [1977] ["(CPLR 3016 [b]) requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of"]).

Mandarin argues that the complaint properly pleads that Wildenstein's omission of his ownership interest in the painting

when providing the appraisal was a fraudulent, material misrepresentation intended to induce Mandarin's reliance. Wildenstein asserts that the complaint fails to plead that Wildenstein specifically intended to defraud Mandarin, and also owed a fiduciary duty to disclose an alleged ownership interest.

██ Wildenstein's letter regarding the painting's value constituted nonactionable opinion that provided no basis for a fraud claim (*see Jacobs v Lewis*, 261 AD2d 127, 127-128 [1st Dept 1999] ["alleged misrepresentations amounted to no more than opinions and puffery or ultimately unfulfilled promises, and in either case were not actionable as fraud"]). The letter merely disclosed Wildenstein's familiarity with the painting, a belief that the painting was worth $15 million to $17 million, and an acknowledgement that the letter was addressed in response to Reymondin, with no mention of Mandarin.

Furthermore, with respect to a claim of fraudulent omission, the complaint fails to allege that Wildenstein owed a fiduciary duty to Mandarin (*see P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 376 [1st Dept 2003] ["A cause of action for fraudulent concealment requires, in addition to the four foregoing elements (of fraudulent misrepresentation), an allegation that the defendant had a duty to disclose material information and that it failed to do so"]).

The narrative within the complaint is devoid of facts indicating any connection between Mandarin and Wildenstein that would give rise to a fiduciary duty. Highlighting this deficiency are pleadings that require leaps of fact and logic such as the unknown role played by Reymondin—the man who allegedly received the appraisal from Wildenstein. By failing to plead the role played by Reymondin or how he was related to the parties, no inference can be drawn, for example, that Wildenstein misrepresented his alleged ownership interest or the painting's value, knowing that Reymondin would transfer the information to Mandarin. Moreover, the letter offers no assistance to Mandarin's claim, in light of the fact that the letter was addressed solely to Reymondin, and in the absence of allegations creating a bridge between Mandarin and Wildenstein. Rather than alleging that Wildenstein misrepresented his ownership to Mandarin specifically, an insufficient, general allegation is proffered that Wildenstein was required to disclose his interest because he should have known that a hypothetical purchaser would rely on the appraisal letter (*see Garelick v Carmel*, 141 AD2d 501, 502 [2d Dept 1988] ["Moreover, in order to plead a

valid cause of action sounding in fraud, the complaint must set forth all of the elements of fraud including the making of material representations by the defendant to the plaintiff"]).

As such, Mandarin's fraud claims were properly dismissed.

## Negligent Misrepresentation

It is well settled that "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (*J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]; *see also Parrott v Coopers & Lybrand*, 95 NY2d 479, 483-484 [2000]).

Mandarin argues that the Appellate Division majority erred in affirming dismissal of this claim because, here, a buyer-seller relationship established privity. Wildenstein responds that no relationship existed between the parties.

A special relationship may be established by "persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (*Kimmell v Schaefer*, 89 NY2d 257, 263 [1996]). Although Mandarin generally pleads that "a special relationship of trust or confidence" existed between the parties, the lack of allegations showing a relationship with Wildenstein mandates dismissal of this claim. The complaint does not allege whether Wildenstein had any contact with Mandarin, whether Mandarin solicited the appraisal directly from Wildenstein, whether Wildenstein knew the purpose of the appraisal letter, or whether Wildenstein was even aware of Mandarin's existence.

In *Kimmell*, the defendant sought to induce plaintiffs to invest in a business venture by directly sending them a memo regarding business projections, meeting with them personally, and sending out correspondence to assure the safety of the investment. We held that the record supported a finding that the defendant established a special relationship with the plaintiffs because of the financial skill and expertise of the defendant, and his continued attempts to communicate directly with the plaintiffs to induce their investment (*id.* at 264).

*Ravenna v Christie's Inc.* (289 AD2d 15 [2001]) involved a similar issue in the context of the sale of a painting where the

plaintiff alleged negligent misrepresentation after meeting with a Christie's representative and receiving advice on the value of a painting. The Appellate Division held that gratuitous advice given in a single meeting, "which did not even create a business relationship, cannot be said to have created a relationship of trust and confidence" (*id.* at 16).

Here, the pleadings fail to allege the existence of any relationship between Mandarin and Wildenstein that would support a negligent misrepresentation claim. Unlike the defendant in *Kimmell*, there are no allegations here that Wildenstein ever met with Mandarin, was retained by Mandarin for an appraisal, or knew that the appraisal would be used by Mandarin for the purpose of purchasing the painting (*see Spitzer v Christie's Appraisals*, 235 AD2d 266 [1st Dept 1997]). And this case has an even more tenuous basis for finding privity, or a privity-like relationship, as it lacks even the bare, minimal contact of the parties in *Ravenna*. Wildenstein's art expertise alone cannot create a special relationship where otherwise the relationship between the parties is too attenuated.

Mandarin further argues that Wildenstein should have known or foreseen that the appraisal was requested by a purchaser for the purpose of buying the painting, but this Court has

> "previously rejected a rule 'permitting recovery by any "foreseeable" plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen' but the individual defendant's conduct did not link it to that third party" (*Parrott*, 95 NY2d at 485).

Accordingly, without further allegations establishing a relationship between the parties, Mandarin's complaint fails and was properly dismissed.

### Breach of Contract

Mandarin alleges that it has sufficiently pleaded a breach of contract claim because it was an intended third-party beneficiary to an appraisal contract between Wildenstein and Reymondin. However, the failure to allege a relationship between the parties again proves fatal to this claim as well.

Generally, a party alleging a breach of contract must "demonstrate the existence of a . . . contract reflecting the terms and

conditions of their . . . purported agreement" (*American-European Art Assoc. v Trend Galleries*, 227 AD2d 170, 171 [1st Dept 1996]). In the context of a third-party beneficiary claim, the plaintiff must establish:

> "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit, and (3) that the benefit to [it] is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost" (*Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783, 786 [2006]).

The complaint only offers conclusory allegations without pleading the pertinent terms of the purported agreement. We are left to speculate as to the parties involved and the conditions under which this alleged appraisal contract was formed. Consequently, by failing to plead the salient terms of a valid and binding contract, Mandarin cannot show that the contract was intended for its immediate benefit.

## Unjust Enrichment

. "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421 [1972]). A plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered' " (*Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2d Dept 2004]; *Baron v Pfizer, Inc.*, 42 AD3d 627, 629-630 [3d Dept 2007]).

Mandarin's unjust enrichment claim fails for the same deficiency as its other claims—the lack of allegations that would indicate a relationship between the parties, or at least an awareness by Wildenstein of Mandarin's existence. Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated (*see Sperry v Crompton Corp.*, 8 NY3d 204, 215 [2007]).

Moreover, under the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement. Without further allegations, the

mere existence of a letter that happens to find a path to a prospective purchaser does not render this transaction one of equitable injustice requiring a remedy to balance a wrong. Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal (*see North Salem Psychiatric Servs., P.C. v Medco Health Solutions, Inc.*, 50 AD3d 986 [2d Dept 2008]; *Vassel v Vassel*, 40 AD2d 713 [2d Dept 1972], *affd* 33 NY2d 533 [1973]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, with costs.